IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ORANGEBURG DIVISION

| | |
|---|---|
| Chad Funchess, | ) |
| | ) C/A No. 5:10-1634-MBS |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Blitz U.S.A., Inc.; Palmetto Distributors | ) **OPINION AND ORDER** |
| of Orangeburg, LLC; Express Lane, LLC; | ) |
| Joseph E. Carroll, and Foley's, Inc., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Chad Funchess filed a complaint in the Court of Common Pleas for Orangeburg County, South Carolina, on or about July 31, 2009, as amended on or about August 4, 2009. Plaintiff alleges that he was operating a chain saw on August 15, 2007 when it ran out of gasoline. He began to pour gasoline from a plastic gasoline storage container into the chainsaw. The vapor trail from the gasoline container ignited and traveled back into the container, causing it to explode and spray burning gasoline onto Plaintiff. He suffered catastrophic injuries as a result.

The gasoline container was manufactured by Defendant Blitz U.S.A., Inc. ("Blitz"). Defendant Foley's, Inc. ("Foley's") sold gasoline containers and other products in bulk to Defendants Palmetto Distributors of Orangeburg, LLC ("Palmetto Distributors") and Express Lane, LLC ("Express Lane"), through an independent contractor, Defendant Jeffrey Carroll ("Carroll"). Plaintiff alleges that the gasoline container he used was defective because it was not installed with a flame arrester/flashback arrester.

Plaintiff alleges causes of action for negligence, breach of warranty, and violation of South

Carolina's Defective Products Act, S.C. Code Ann. § 15-73-10. Plaintiff alleges that Blitz is culpable because it manufactured a gasoline container that was defective and dangerous to the consumer. As to the remaining Defendants, Plaintiff contends that they are each liable because they were in the supply chain that ultimately provided the gasoline can to Plaintiff.

Blitz removed this action on June 24, 2010 on the basis of diversity jurisdiction. Plaintiff is a citizen of South Carolina. Blitz is a citizen of Oklahoma. Foley's is a citizen of North Carolina. However, at the time of removal Palmetto Distributors, Express Lane; and Carroll were all South Carolina residents. Blitz asserted in its notice of removal that Palmetto Distributors, Express Lane, and Carroll were fraudulently joined so that they may be disregarded for purposes of diversity jurisdiction. There is no contention that the amount in controversy is not in excess of $75,000.

This matter is before the court on Plaintiff's motion to remand, which motion was filed on July 15, 2010. Blitz filed a memorandum in opposition to Plaintiff's motion on August 2, 2010, to which Plaintiff filed a reply on August 13, 2010. The court held a hearing on November 10, 2010. After hearing the arguments of counsel, the court granted the motion to remand. The within order sets forth in writing the court's oral order.

## I. DISCUSSION

The burden of establishing federal jurisdiction is placed upon the party seeking removal. *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). Because removal jurisdiction raises significant federalism concerns, the court must construe removal jurisdiction strictly. *Id*. (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)). When federal jurisdiction is doubtful, a remand is necessary. *Id.*

A.  FRAUDULENT JOINDER

Complete diversity requires that in any action removed to federal court, "no party share[] common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457 461 (4th Cir. 1999) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)); 28 U.S.C. § 1332(a). The fraudulent joinder doctrine will permit a defendant to remove a case to federal court despite the presence of another non-diverse defendant. *Id*. To establish fraudulent joinder, the removing party must show either: "'(1) outright fraud in the plaintiff's pleading of jurisdictional facts or (2) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp. 2d 652, 654 (D.S.C. 2006) (quoting *Hartley v. CSX Transp. Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)). The second standard of the fraudulent joinder analysis is even more favorable to a plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Hartley*, 187 F.3d at 424. A plaintiff does not have to show he will prevail against the defendant; he must only show that he has a "slight possibility" of succeeding. *Id.* at 426. If plaintiff can show this "glimmer of hope," the defendant is properly joined. *Id.*

The question presented is whether Palmetto Distributors, Express Lane, and Carroll are "sellers" within the meaning of the Defective Products Act, S.C. Code Ann. 15-73-10, which provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if
>
> (a) The seller is engaged in the business of selling such a product, and
>
> (b) It is expected to and does reach the user or consumer without substantial change in the

3

condition in which it is sold.

(2) The rule stated in subsection (1) shall apply although

(a) The seller has exercised all possible care in the preparation and sale of his product, and

(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller.

1. <u>Palmetto Distributors of Orangeburg, LLC and Express Lane, LLC</u>

Blitz contends that it removed the within action upon learning during discovery that Plaintiff is the owner and sole proprietor of these two entities. Blitz raises several arguments regarding these Defendants.

Blitz first argues that there are no facts to support a finding that either of these entities "sold" the gasoline container to Plaintiff in the sense of passing title to Plaintiff. Rather, as was stated in the hearing, most likely Plaintiff simply used a gasoline container that was in the inventory of one of his businesses. The court disagrees.

The plain language of section 15-73-10 provides that a seller of a defective product may be liable even if "[t]he user or consumer has not bought the product from or entered into any contractual relation with the seller." Further, in *Henderson v. Gould, Inc.*, 341 S.E.2d 806, 810 (S.C. Ct. App. 1986), the South Carolina Court of Appeals noted with respect to section 15-73-10 that the terms "sell" and "seller" "are merely descriptive and the doctrine of strict liability may be applied if the requirements for its application are otherwise met, even though no sale has occurred in the literal sense." All that is required is that the product had been injected into the stream of commerce. *Id.*

Second, Blitz asserts that Plaintiff is in effect suing himself because he is the sole proprietor and owner of Palmetto Distributors and Express Lane. The court disagrees. Both Defendants are

limited liability companies and are governed by the South Carolina Uniform Limited Liability Company Act. Under the Act, Palmetto Distributors and Express Lane are legal entities distinct from Plaintiff, the sole member of each. *See* S.C. Code Ann. § 33-44-201. A limited liability company can sue and be sued. *Id.* § 33-44-112. Moreover, S.C. Code Ann. § 33-44-410 provides:

> (a) A member or manager may maintain an action against a limited liability company or another member or manager for legal or equitable relief, with or without an accounting as to the company's business, to enforce:
>
> (1) the member's rights under the operating agreement;
>
> (2) the member's rights under this chapter; and
>
> (*3) the rights that otherwise protect the interests of the member, including rights and interests arising independently of the member's relationship to the company*.
>
> (b) The accrual, and any time limited for the assertion, of a right of action for a remedy under this section is governed by other law. A right to an accounting upon a dissolution and winding up does not revive a claim barred by law.

(Emphasis added)

Third, Blitz asserts that Plaintiff's sole remedy against Palmetto Distributors and Express Lane is under the Workers' Compensation Act. In his reply, Plaintiff avers that the "exclusive remedy" provision of S.C. Code Ann. § 42-1-540 does not apply because (1) Palmetto Distributors had fewer than four employees and is exempt from the Act's requirements, S.C. Code Ann. § 42-1-360(2) and (2) Express Lane carried workers compensation insurance but Plaintiff opted out of coverage. At the hearing, Blitz conceded Plaintiff's position on this matter.

The court determines that Plaintiff has a "glimmer of hope" of succeeding in a cause of action against Palmetto Distributors and Express Lane.

## 2. Joseph E. Carroll

Blitz asserts that Carroll was fraudulently joined because he is not a "seller" in the chain of distribution of the gasoline can. Carroll worked as an independent contractor salesman for Foley's and received a commission on sales. Blitz asserts that Carroll simply brokered transactions and never affirmatively passed ownership of the gasoline cans from himself to Palmetto Distributors and Express Lane.

As stated in the previous section, South Carolina has recognized that there need be "no sale . . . in the literal sense" for an entity to be liable under section 15-73-10. It is true that Carroll did not pass title of the gasoline can to Palmetto Distributors and Express Lane. Nevertheless, he assisted in passing the gasoline can through the stream of commerce and received a monetary benefit for doing so. In *Graham v. Bostrom Seating, Inc.*, 921 N.E.2d 1222, 1227 (Ill. Ct. App. 2010), the Illinois Court of Appeals held that:

> Even parties who are not within the actual chain of distribution, but who play an integral role in the marketing enterprise of an allegedly defective product and participate in the profits derived from placing the product into the stream of commerce, are held liable under the doctrine of strict liability. "[S]trict liability arises[ ] not because of the defendant's legal relationship with the manufacturer or with other entities in the manufacturing-marketing system, but because of its 'participatory connection, for [its] personal profit or other benefit, with the injury-producing product and with the enterprise that created consumer demand for and reliance upon the product.'"

(citations omitted). Similarly, in *Tedone v. H.J. Heinz Co.*, 686 F. Supp. 2d 300, 315 (S.D.N.Y. 2009), the New York district court stated:

> "Distributors and retailers may be held strictly liable to injured parties, even though they may be innocent conduits in the sale of the product . . . ." In fact, "It is well settled that strict products liability extends to retailers and distributors in the chain of distribution even if they never inspected, controlled, installed or serviced the product."

6

(citations omitted). Given South Carolina's expansive reading of the term "seller," the court finds that Plaintiff has a "glimmer of hope" of succeeding in a cause of action against Carroll.

B.   CONSENT TO REMOVAL BY DEFENDANT FOLEY'S INC.

Plaintiff also asserts that the case must be remanded because Blitz did not obtain consent to removal from Foley's. Title 28, United States Code, Section 1446 sets forth the procedures that must be followed in order for a defendant or defendants to properly remove a case to federal court. Section 1446 provides, in relevant part:

> (a) A defendant or defendants desiring to remove any civil action . . . from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.
>
> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

Courts consistently have interpreted section 1446(a) to require all defendants in an action who properly may join in a removal petition "to file" a petition for removal within thirty days of service of process. In other words, section 1446(a) "requires an official filing or voicing of consent." *Mason v. IBM*, 543 F. Supp. 444, 446 (M.D.N.C. 1982). If all defendants do not join in the petition for removal within the designated period–either by signing the same notice, filing an independent notice or consent, or otherwise unambiguously notifying the court that they consent to removal–the removal may be deemed defective. Although the requirement for timely consent is not jurisdictional, it is mandatory. *Id.* When a defendant does not timely join in a removal petition and the plaintiff

7

does not waive the irregularity, the plaintiff is entitled to a remand. *Crompton v. Park Ward Motors, Inc.*, 477 F. Supp. 699, 700 (E.D. Pa. 1979).

Plaintiff served Foley's copy of the summons and complaint on the South Carolina Secretary of State pursuant to S.C. Code Ann. § 15-9-245, which provides:

> (a) Every foreign business or nonprofit corporation which is not authorized to do business in this State, by doing in this State, either itself or through an agent, any business, including any business activity for which authority need not be obtained as provided by Section 33-15-101, is considered to have designated the Secretary of State as its agent upon whom process against it may be served in any action or proceeding arising in any court in this State out of or in connection with the doing of any business in this State.
>
> (b) Service of the process is made by delivering to and leaving with the Secretary of State, or with any person designated by him to receive such service, duplicate copies of the process, notice, or demand. The Secretary of State immediately shall cause one of the copies to be forwarded by certified mail, addressed to the corporation either at its registered office in the jurisdiction of its incorporation, its principal place of business in the jurisdiction, or at the last address of the foreign business or nonprofit corporation known to the plaintiff, in that order.
>
> (c) Proof of service must be by affidavit of compliance with this section and filed, together with a copy of the process, with the clerk of court in which the action or proceeding is pending. There must be filed with the affidavit of compliance the return receipt signed by the foreign business or nonprofit corporation or other official proof of delivery or, if acceptance was refused, there must be filed the original or a photostated or certified copy of the envelope with a notation by the postal authorities that acceptance was refused. If acceptance was refused, a copy of the notice and process, together with notice of the mailing by certified mail and of refusal to accept must be sent promptly to the foreign business or nonprofit corporation. If this section is complied with, the refusal to accept delivery of the certified mail or to sign the return receipt shall not affect the validity of the service, and the foreign corporation refusing to accept the certified mail must be charged with knowledge of the contents thereof.
>
> (d) Service under this section may be made also by delivery of a copy of the process to any foreign business or nonprofit corporation outside the State. Proof of the delivery must be made by affidavit of the person making delivery, and the affidavit must be filed with the clerk of court in which the action or proceeding is pending.

8

(e) The Secretary of State shall charge a fee of ten dollars for the service.

(f) This section does not prescribe the only means, or necessarily the required means, of serving a foreign business or nonprofit corporation not authorized to do business in this State.

*See also* S.C. R. Civ. P. 4(d) ( providing that service may be made upon a corporation "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.").

The certified letter from the Secretary of State to Foley's was returned undeliverable. Blitz contends that Plaintiff did not demonstrate proof of service as required by section 15-9-245(c). Thus, according to Blitz, it was not required to obtain consent from Foley's because Foley's was not "properly joined and served" as a defendant at the time of removal. *See* 28 U.S.C. § 1441(b) (providing that a diversity action is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"). The court disagrees. The South Carolina Secretary of State accepted service on September 29, 2009. ECF No. 12-1. Service is sufficient if the summons and complaint are served in the manner prescribed by statute. S.C. R. Civ. P. 4(d)(7).

In *First Independence Bank v. Trendventures, L.L.C.*, C/A No. 07-CV-14462, 2008 WL 253045 (E.D. Mich. Jan. 30, 2008) (unpublished), the removing defendant was unable to locate a co-defendant in order to obtain consent to removal. The removing defendant urged the district court to recognize an exception for "non-appearing, defaulted defendants." The district court recognized that such an exception was created by a district court in Florida in *White v. Bombardier Corp.*, 31

9

F. Supp. 2d 1295 (N.D. Fla. 2004), but had not been adopted elsewhere. The court agrees with the *First Independence Bank* court that nothing in § 1441(c) excuses a removing defendant from obtaining consent of a properly served co-defendant on the grounds that the co-defendant cannot be found. For this additional reason, remand is proper.

## II. CONCLUSION

For the reasons stated herein and at the hearing, Plaintiff's motion to remand (ECF No. 12) is **granted**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

November 16, 2010.